Hear ye, hear ye, hear ye. The United States Court of Appeals of the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the last day of our panel session. Judge Brasher, Judge Carnes, and I are very happy to welcome you. We are hoping that we'll get back to business as usual relatively soon. But for the time being, we're going to deal with the Zoom environment and handle these cases in the best way we can. You've got a clock at the top corner of your Zoom screen and so as that clock starts to wind down and gets to two or one minute, please begin to bring your remarks to a close. If we take you beyond the time, don't worry, just keep talking. You're on our time and not yours. And with that, we're ready to begin. Our first case this morning is number 20-11652, Thomas Reynolds as a trustee of the estates of Robert and Frances Stanford v. ServisFirst Bank. And Ms. Flowers, you're up first. May it please the court. My name is Zan Flowers. I represent the trustee who is pursuing this appeal on behalf of the creditors who have been disadvantaged by ServisFirst's explicit use of an estate asset when that asset should have been used equitably for the benefit of the creditors. The issue is whether the district court erred in ruling that the underlying appeal was statutorily moot pursuant to Section 363M. That ruling was error for two reasons, both of which are independent and sufficient grounds to rule in favor of the trustee today. First, Section 363M's protection only by the code. Because ServisFirst did not have a claim in Industrial Lane on the sale date, it was not authorized to credit that property under Section 363K. Therefore, the Industrial Lane sale was not authorized by Section 363, such that 363M's protection could apply to it. Second, Section 363M's protection only extends to sales to good faith purchasers. In the 11th the Industrial Lane sale is not shielded from modification or reversal or indeed from appellate review. I will also address the fact that ServisFirst subsequently sold the Industrial Lane property to a third party. That subsequent sale does not render this appeal moot under Article 3 because this court can still grant effective relief. As a preliminary matter, it is important to understand exactly what a roll-up is and what a roll-up does to pre-petition debt to arrive at the correct outcome today. A roll-up is a commonly accepted and understood means of post-petition financing under Section 364. It's not defined by the bankruptcy code and this court has not defined it, but other jurisdictions have. The bankruptcy courts for the Southern District of New York and the District of Delaware have both defined in their local rules of bankruptcy procedure exactly what a roll-up is. As the District of Delaware explained in the with the proceeds of post-petition loans. Two important things happen in a roll-up. Number one, the debtor's pre-petition obligations are paid off and satisfied. And number two, the lender receives in exchange a post-petition claim against the debtor in the amount of any new money extended as well as the amount of the pre-petition obligations. That is an attractive option for lenders because that post-petition claim has an administrative expense priority, meaning that lender must be repaid in full before the debtor will be able to confirm a plan of reorganization. Lenders who want to ensure that they reserve their rights as to all parties obligated pre-petition on the roll-up loans will typically require that any parties obligated pre-petition also become guarantors on the post-petition obligations. Service First did not do that in this case. Indeed, the Stanfords were not guarantors on the diploma to American Printing Company. That is why we are here today. Can I ask you to address something at some point during your presentation? From my reading of the briefs, and I haven't read the underlying in their place, didn't really have a problem with the credit bid arrangement until the unsecured creditor at the sale hearing raised the argument. How does that impact this case, if at all? Well, Your Honor, it might not have necessarily a big impact on this case, but it shows that the Stanfords did not even realize the import of the roll-up in APC's case on their case until that the roll-up and the effect that that would have on their case. Because you had both the corporate bankruptcy and the individual bankruptcies going on at the same time? Yes, Your Honor, they were going on at the same time, but I will note that they were two separate cases. They were not consolidated, and these transactions being the roll-up loan and the industrial lane sale were not proceeding at exactly the same time. The roll-up loans were extended in July of 2019, and the sale proceedings did not begin until fall of 2019. Can I ask you, how does, this follows up on Judge Jordan's question, the trick in this case seems to be the fact that you have the two separate debtors here, and so the debtor in possession financing goes to the corporation, but we're talking about a lien on property that was owned by the individuals. How does the debtor in possession financing to the corporation necessarily extinguish the lien on the property? Because the reason or what a roll-up does is it pays off pre-petition obligations, and one of those pre-petition obligations that were paid off was the industrial lane mortgage. Under Alabama law, specifically Alabama Code Section 35-1026, payment of a mortgage debt divest title passing by the mortgage, and this is the first reason that this case is not statutorily moot, because the sale is not authorized, because a credit bidding party pursuant to Section 363K must have a claim in the property being sold in order to credit bid. The only claim that Service First ever had an industrial lane was the industrial lane mortgage, but as the Alabama Supreme Court explained in Cottingham v. Citizens Bank, once a mortgage debt is paid, there is no more mortgage. The mortgagee's right in a mortgage is to collect the debt out, and if necessary, to sell the land to do that. So upon payment of the mortgage debt, the mortgagee is immediately divested of its mortgage. There does not have to be any writing to evidence that. It happens automatically, and the mortgage becomes under Alabama law, quote, functus officio and dead. Well, so but so what your position is what the bank should have done is it should have somehow in the post-petition financing included that that post-petition financing was secured by a mortgage on the property? Is that what you're suggesting? No, your honor. So the industrial land property could not have been encumbered in American Printing Company's case because the cases were not consolidated. Yeah, yeah, and that's and I think I think that's right, and I guess that's why I'm and this happens a lot. I think I mean I see like every bankruptcy appeal I've had has this kind of weird situation where it's multiple bankruptcies going on, but that's what I think is sort of weird about this is that there's nothing that the bank could have done within the context of the corporate bankruptcy to provide debtor in possession financing and yet maintain its lien on property that's owned by someone else. What do you say about and so the bankruptcy court was just like the lien stays. I mean that's what the bankruptcy court stake was. Why is that wrong? Because Service First elected its remedy. Service First did give up in American Printing Company's case its lien on industrial land because that mortgage debt was paid, but what it received in exchange was a 13 million dollar post-petition claim against American Printing Company with an administrative expense priority. That effectively put put Service First in a blocking position. No plan was going to be crammed down over Service First's 13 million post-petition administrative expense claim. Service First essentially put all of its eggs into APC's basket that we will use this entire chunk of 12 million dollar pre-petition obligations which both parties are obligated on. We will roll that all up in American Printing Company's case, thus receiving a significant advantage in that case. Service First. So what do we do with I mean you know the interesting thing about this is your merits argument sort of goes into the moodness argument too. They're sort of combined, but what do we do with the bankruptcy court's sale order which specifically finds that this was a good faith purchaser for value? Don't we have to review that fairly deferentially given that that's an express finding in the bankruptcy court's order? Of course, your honor, that does get deference, but when that finding is clearly erroneous, then it then this court should still reverse it because what good. Yeah, well and so and I mean this is this I think probably my last question, but so at the very least I guess there is a dispute about this lien. Why isn't why isn't that of a value here that you know that the dispute about the lien has been resolved by this property being sold to the bank? Maybe you're right. Maybe if we really looked at this, a court would ultimately determine that the lien didn't exist anymore, but it sure seems like there's at least a dispute of it and so can't you resolve a dispute by the transfer of property and is that not something that we could say happened here? Well, we have to look at what actually qualifies as a claim. A claim is defined under Section 1015A. It is a very broad definition. A disputed claim certainly qualifies as a claim. A satisfied claim does not. A claim is a right to repayment, but Service First had already been repaid on the mortgage debt by virtue of the roll-up in American Printing Company's case, so the type of claim required here because this was a credit bid under Section 363K has to be an actual claim under the bankruptcy code, but a satisfied claim, a debt that has already been repaid, is not a claim that will support a credit bid. I also want to address the fact that Service First subsequently sold industrial land to a third party. That does not render this appeal moot under Article 3 because this court can still grant effective relief. Section 363M hints at two possible avenues of relief in a circumstance like this, modification and reversal. Reversal is not an option anymore because the property has been sold to what appears to be a good faith purchaser, as to Service First at least, but modification is still an option. The key issue with the industrial land sale is that there was a failure of consideration. Service First essentially provided $3.5 million of illusory consideration, and importantly, that was to the detriment of all of the creditors in this case. By this point, Service First was not even a creditor of the estate because all of the Stanford's obligations to Service First had been repaid in American Printing Company's case because of the roll-up. So the sale order can be modified, and it can be modified to require that Service First pay the consideration it purported to pay in the first place. However, if this court was reticent to take that step and modify it, which would be what amount? $3.5 million. If this court was reticent to rewrite that sale order itself or to modify the sale order itself, this court could do exactly what it did in Saybrook. It is to reverse and remand with instructions not inconsistent with this result. The bankruptcy court then has power under Section 105 to enter any order, process, or judgment necessary to carry out the provisions of Title 11 and any court order. Can I ask you one more question? Service First argues in part that if your theory of the case is correct, and I hope I have their argument right, APC would be entitled to transfer of the industrial lane property and subrogate it to all the pre-petition rights and remedies of Service First in industrial lane under Alabama law. What do you say to that? I said that that argument is a red because the code section of Alabama Code that does apply is the more specific one governing mortgages, which is 351026. I'll also note that the language, and I believe it's Alabama Code 832 that Service First cited in their brief about sureties, that that discusses a permissive type of transfer. But what is contemplated under Alabama Code Section 351026 is an automatic that if there is no debt, there is no mortgage. What we have here, your honors, is a creditless credit bid. It is not authorized by the code. It is not shielded from appellate review by Section 363M, and it is not outside of this court's power to rectify on appeal. Thank you. All right. Thank you very much, Ms. Flowers. You saved your time for rebuttal. Mr. Reynolds. Thank you. May it please the court. I'm Robert Reynolds. I represent Service First Bank. I have two points to make to the court this morning. First, this appeal is moot and should be dismissed. Second, the appellant's claims are without merit. The bankruptcy judge was not clearly erroneous in her findings that the Stanford's were stopped from asserting these first. This appeal is moot simply because the Stanford's did not obtain a stay of the sale of their building under 363M. 363M was written by Congress for a clear, clear purpose. Encourage people to buy assets in bankruptcy cases at the highest price. Maintain employment in those or if not possible, redeploy those assets for an alternative use. 363 was utilized by the Stanford's at their request and was expressly permitted under the code and authorized by the bankruptcy court. The Stanford's got exactly what they saw. The bank was expressly authorized to credit bid as provided under 363K of the code. The court found the bank to be a good faith purchaser and entitled to the protections of 363M. We know from the charter case, 11th circuit charter case, that the failure to obtain a stay renders the appeal to a good faith purchaser in a 363 sale moot. This is a flat three question rule in the 11th circuit. One, was the sale authorized? In this case, yes. Was the sale consummated? Yes. Was a stay granted? No. Result, the appeal is dismissed. Now we know from the Stephan case in which Judge Jordan, you served on that panel. It clearly states that 363M does not say that a sale must be proper, but only that the sale be authorized by the bankruptcy court. If so, the inquiry ends there. Is that always the case? I mean, you can never look to see if a sale was completely illegitimate under the bankruptcy code in terms of figuring out this question. Your Honor, I think 363M preempts that unless the trial court finds that there was no value or the trial court finds that there was not a good faith purchaser. And there was the exact opposite finding in this case. So I think it would be an issue whether the trial court was clearly erroneous. What did, what did, help me, help me with my recollection. What did the bankruptcy court say or do when the unsecured creditor objected and noted the potential problem with the way this transaction was being structured? That's a great question, Your Honor. That was never raised to the creditor, came up to the debtor after the sale hearing and brought it there, this theory to their attention. It was never brought to the court. And I'll address that in the second part, because that's critically important as to the bid procedures order, which required that any objections to confirmation of sale be filed by 930 that morning before the hearing and none were filed. Now, Your Honor, we know from McNeil v. Economics, another 11th Circuit. And then, hold on, Mr. Reynolds. Yes, sir. So you're saying that the unsecured creditor brought the problem to the stand for its attention right after the sale was completed? After the sale order was entered by the court. Well, after the sale order, okay. It was never raised to the court at all. And then, help me with the timing then, I'll confirm with Ms. Flowers when she gets up. And so, after that event occurred, tell me when the Stanford's raised an objection in terms of when the sale took place. They never raised an objection prior to the sale or prior to the entry of the sale order. The first time this issue was raised was several hours, I think, later in the afternoon. When the Stanford's in a complete 180 degree turn, asked the court to set aside the very sale order that they had advocated earlier that day. That was the first time the matter was brought to the court. Okay, go ahead. Thank you. And I was going to add in the McNeil v. Economics case cited in our brief on which Judge Karn served on that panel. There's this statement. It's very excellent. It matters not whether the authorization was correct or incorrect in terms of a requirement for a bond. The debtor has now appealed asserting that the lender was not a good faith purchaser. And as I'll mention in a moment, that issue of good faith was never raised to the trial court, only the issue of value. And the issue of value was only raised after the sale order had been entered. No stay was granted and the case was dismissed. Let me ask you a question that has been bothering me. And I know you practice in this area, so you can probably explain this to me. So what would happen if in this circumstance, the sale order is entered and the debtor or accreditor says, oh my gosh, it turns out there was collusion here. We didn't know about it, but Judge, this wasn't in good faith. This was just a setup. What would they do? And what would the judge do? Unfortunately, I've been involved in cases where that is raised. And many times, the issue of collusion and so forth is not discovered until after. And so you will probably have a motion to set it aside. And it's clear that if the buyer was not acting in good faith through collusion, fraud, paying off another bidder to keep someone from competing, then that entire transaction can be set aside by the court because they would not be a good faith purchaser. Now, I will say this, it has to be brought quickly. It has to be brought very quickly. But there have been instances where that's challenged and that has been denied by the court because the conduct was known prior to the actual sale. But the person remained silent because they hoped they would still be the high bidder. But there is a remedy for that. Yeah. So there is, I guess. So there has to be, and I think just the way you talked about that, there has to be some inquiry a court can make into whether there actually was a good faith purchaser even after the sale order is entered. That's correct, Your Honor. And in fact, in the sale procedures order, as a part of the confirmation of the case, the creditor, the high bidder, or in this case, what was defined as the qualified bidder, had to certify to the bankruptcy court that it did not engage in any of those prohibited activities, which would be a representation under penalty of based on the stipulations of counsel at the sale hearing. Okay. And can we review sort of the way you understand this sort of statutory mootness issue when a bankruptcy court makes that determination? So let's just assume that happens. So there's a sale order. Someone shows up and says, oh my gosh, this guy was colluding and whatnot. And then the bankruptcy court says, you know, I don't think that really happened. I think they were good faith purchasers. So I'm going to allow the sale to go through anyway. Can we review that determination on appeal? Can we review whether they actually were a good faith purchaser or are we barred from reviewing that? I think that under 363M, you would be barred from reviewing that as the statute clearly says. And this is important. They never raised the issue of good faith before the court. They didn't raise it in their motion to set aside. They only challenged value with this crazy argument about roll-up, which I hope I have time to address. But in this situation, what Congress wanted is the assets sold. Under their theory, any creditor, much less the debtor, could simply challenge good faith by saying usury, lender liability claim, you didn't add up your debt right. It's anti-competitive. They could come up with any kind of reason to say that it's not in good faith and get a free run at an appeal without a bond. And if that occurs, we'll never have chapter sales in Chapter 11 case under 363. And that's what Congress specifically sought to avoid because it is authorized under the code. And that's completely different from the argument that they make regarding the SABRA. This sale was properly conducted. It was authorized. It was confirmed as requested by the Stanford's and the sale was consummated. Under 363M, this appeal is moved and the district court is due to be deferred. Now, you're honest that the inquiry should end there, but I'll comment on the common lending relationship. Judge Brashers, you said in this situation, Stanford's individually owned the building. They leased that building to their company. Their company paid them rent. They used the rent to pay their mortgage debt to Service First. The company also borrowed money from Service First to finance receivables, buy raw materials, paper to do printing, which is what they were engaged in. This is the company borrowing money for that, not the Stanford's individually, right? Correct. The Stanford's just borrowed money to buy their buildings and lease those buildings to their company. But because it was closely held, Judge Jordan, as common, both entities, the individuals in the company, cross-guaranteed the debts and the liens cross-collateralized the same bankruptcy judge, Judge Mitchell, one of the most respected bankruptcy judges in the 11th circuit. At that time, Service First held a $12M plus claim against the Stanford's in their case and a $12M claim against the company. Well, the company had run out of money. So the Stanford's asked the bank and the bank agreed to loan an additional $1M to keep it going. Help me with some classification for someone who is not completely well-versed in the bankruptcy world. Did each of those positions put Service First in a secured or unsecured creditor capacity with regards to either the company or the Stanford's individually? Or was it split between the two? No, Your Honor. It's divided this way. Under Section 506A, a secured creditor is secured only to the extent of the value of the collateral securing the claim. So even though the bank had a $12M pre-petition claim against the Stanford's, the collateral securing that claim was only worth $3.5M. The collateral securing the company claim was worth about $2.5M. So the bank was underwater both ways. But the collateral of both parties secured the $12M debt. Now, the extra $1M which kept the company afloat, that increased the debt of the company. And because of the way the loan was structured, that debt to the company was not paid. It was simply renewed and moved from one advantage of the Stanford's. Because if the company's case was to be confirmed, which obviously never happened, then the bank would have had to have been paid $13M in confirmation. If that had been paid, the Stanford's debt would have been satisfied. But that's not what occurred. In Capmark, and they argue that it was a satisfaction. It's not a satisfaction. It's simply a renewal of the existing debt. It changes from one category to the other in the company case. But as Judge Brasher mentioned, it does not change the status of the collateral securing the claim against the Stanford's. Now, I think that's critically important because if we look at the bid procedures order, which was a final order, it required, and they had 28 days to set it aside. There's a lot of time period here. It never occurred. They required any objections to be filed by 9.30am. That creditor, who supposedly mentioned it to the Stanford's after the sale, was the largest, one of the largest unsecured creditors and knew about this from the very beginning and actually promoted the sale. So the court, based upon the stipulations in the evidence, in paragraph 22, found that the bank was a good faith credit bid purchaser and entitled to the protections. The $3.5 million credit bid, your honors, reduced both claims. There is no windfall. There is no double recovery. Each loan, each claim in each case was reduced by the $3.5 million credit bid. Judge Mitchell interpreting own orders was not incorrect in doing so. And if I may have one other moment, your honor, just to finish my last thought. What? Your honor, the decision of the bankruptcy court in interpreting her own orders was not clearly erroneous. The Stanford's are a stop from unwinding a consummated sale of their own actions and the law of the case established by the bid procedures order and the sale confirmation order. I thank the court. All right. Thank you very much, Mr. Reynolds. Ms. Flowers. May it please the court. The bank is asking you to create two circuit splits, abrogate Saybrook and also find that the Stanford's have waived arguments, which they in fact did not waive. If you're concerned about waiver, I would strongly encourage you to review document 1016, which is found in volume three of the record. That is the motion to amend or stay that the Stanford's filed within an hour of entry of the sale order. They clearly laid out every argument that I had presented to you in oral argument and in briefs about why service first was not permitted to credit bid for industrial lane. One of the circuit splits that the bank would have you create is about the meaning of a rollup. Conspicuously, the bank cited to no law supporting their contention about what a rollup does. Every other case that I have been able to locate describing what a rollup does states that it satisfies prepetition obligations. The second circuit. Flowers, let me let me ask you about what at least is sort of a basic feeling I get about at least an aspect of this case. That is, it's hard to think of a scenario where a party, an interested party agrees to a course of action. Let's that course of action run at least, you know, 75 or 80% of the way through and then changes his or her mind and tells the court to set things aside. So tell me why that general feeling of too late is wrong. Because we do not hold parties to their confused mistakes or unthinking blunders, as this court held in Slater versus United States Steel, and that would be to the detriment of other parties there. The standard should not be judicially stopped in this case because, well, first of all, it would be the trustee to be judicially stopped, which is impermissible under Parker v. Wendy's, which was affirmed in footnote 16 of Slater versus United States Steel. So we simply do not hold parties to that. When it was clearly wrong, it would be to the detriment of all of the creditors. And I know I'm going to take you over your time, so just don't worry. What did the trustee do or say in terms of timing with regards to the sale? Did the trustee have any problems before the Stanford's voiced a concern? The trustee was not appointed until March of this year. So the trustee was not party to that at all. I see. Okay. So there had to be, well, maybe not. Since there was a debtor in possession, was there a trustee appointed in any way, shape, or form for the corporate bankruptcy? Once it converted to Chapter 7, yes. Yes. Okay. Okay. Thank you. I'm sorry we're over time. Let me ask a question. What's your position should you succeed? Your position would be that the bank no longer has its collateral, that that's done. What happens with the property, this $3.5 million worth of property? How are the assets, they're going to be divided up or attributed as far as creditors, or is this a great deal for the Stanford's? They got a loan, they had secured, and all of a sudden by this alchemy-like machination that's come along, suddenly they're off the hook. Could you tell me what the consequence of your victory would be? The consequence of the victory, would be that the creditors are able to receive some of the money which they are owed. The Stanford's are not going to take $3.5 million and buy a yacht instead of the Bahamas. What is going to happen is we're in a Chapter 7 case. The trustee is liquidating the property and trying to repay the actual creditors. That just means that the other creditors will not be disadvantaged anymore, and they will actually have a chance of recovery. But the bank had actually loaned the money and then gave another million dollars. They're not going to get, mostly when you have a secured asset, that's what you get from that. The bank's sort of out in the cold then. Somewhat, Your Honor, but the bank also elected its remedy. It chose to put all of its eggs in ABC's basket. What great deal did it get with all the eggs in that basket? What was the great deal the bank got from this? A $13 million post-petition administrative expense, super priority claim, and a blocking position. Okay, that sounds good. That's a lot of words. What did they get? What was the practical consequence of that? They were not able to have a plan crammed down that they did not like. All right, what will they get money-wise out of all this? Well, Your Honor, they should not get anything. They're not owed anything. Because they have taken a- You're saying they get zero now out of this bankruptcy? They lost their asset and they get nothing from the bankruptcy? No proceeds? They got whatever they would have recovered in American Printing Company's case, Your Honor. I'm not saying that this is a great deal for the bank. What I'm saying is that the bank has made its bet and now it needs to lay in it. It decided that it wanted to satisfy or have a chance at satisfying those debts in ABC's case rather than solely in the Stanford's case. What did it get, though? I mean, this is a bank. I'm still not understanding. What did they get out of putting their eggs in all this basket money-wise? They didn't get anything money-wise, Your Honor, that I'm aware of, or at least not in the Stanford's case. However, if Service First wins this case, what they will be able to do, because we will now have a new definition of what a roll-up is in the 11th Circuit, they could go out and lend a million dollars to five different debtors. When each of those debtors file their Chapter 11 case, Service First can roll up the $1 million debt in Number 1's case. And because it was not satisfied by virtue of the roll-up, per our ruling in this case, it could roll it up again in Debtor Number 2's case. And then the bottom line is, boy, bottom line, they get nothing. That's what you're saying. In this case, Your Honor— Does this make any sense to you, this result? Yes, Your Honor, because the bank chose its option, and because it is not—fundamentally, the bank is only entitled to have its debts repaid one time. The Supreme Court explained in Butner v. United States that it is state property law that applies, and we do not let parties have, quote, a windfall by reason of happenstance of bankruptcy. Though Service First may not receive a substantial windfall in this case, if it loses—it will if it wins—it will then be entitled to go out and achieve a substantial windfall against any number of other debtors going forward, taking advantage of Section 363M, using it as a sword rather than the shield it was intended to be used as. All right. Thank you very much, Ms. Flowers. Thank you very much, Mr. Reynolds. We appreciate the help.